Mr. Justice Trimble
 

 delivered the opinion of the Court.—
 

 This is an action of ejectment, brought in the Circuit Court for the district of Kentucky, by the lessors of the defendant, in error, and against the plaintiffs in error, wh.o were defendants in the Court below.
 

 The lessors of the-plaintiff, in that Court, claimed the land in controversy, as heirs at law of Sarah G. Elliott, formerly Sarah G. Peart, deceased; who, in her lifetime, had intermarricd with the defendant, James Elliott. . The defendants claimed by virtue of a deed of conveyance, made by James Elliott and Sarah G. Elliott his wife, in her lifetime, to Benjamin Elliott, and a deed reconveying the land from Benjamin Elliott to James Elliotti
 

 On the trial of the general issue between the parties, the defendants took a bill of exceptions to certain opinions of the Court, in overruling motions made by the defendants for instructions. See., and in granting instructions to the jury, riioved by the
 
 *334
 
 plaintiff, in.the progress of the'trial; and, a verdict and judgment having been rendered against the defendants, they have brought the case before this Court by writ of error.
 

 The bill of exceptions states, “ that upon the trial of this case, the plaintiffs read as evidence, a patent from the commonwealth to'Griffin Peart, dated the 1st of May 1781, covering the land in controversy, (which patent is made part of the bilí of exceptions,) and sundry depositions, taken and filed in the cause, (also made part of the bill of exceptions;) and proved that, upon a division of the land granted to Griffin Peart, by said patent, the part in contest was allotted to the late Sarah G. Elliott, formerly Sarah G. Peart, and that she was seised thereof in severalty ; that the said' Sarah G. Elliott died, before the institution of this suit, about the year 1822, without issue; and that the defendants were in possession of the land, allotted to her as aforesaid. And after the plaintiffs had closed their evidence, touching their derivation of title, the .defendants, as they had reserved the rigljt to do, moved the Court to instruct the jury, that the evidence adduced on the part of the plaintiffs, was insufficient to prove title in the lessors of the plaintiffs, and that the same ought to be rejected; but the Court refused so to instruct, or to exclude the evidence; and, on the contrary, instructed the jury that the said evidence, if believed Ky them, was
 
 prima fade
 
 evidence, that the lessors were the legal , heirs of the patentee, Griffin Peart, See. To which opinion of the Court, in all its parts, the defendants except.
 

 The defendants then gave in evidence, the deed of conveyance from Sarah G. Elliott and her husband, to Benjamin Elliott, (dated the 12th'day of June 1813,) for the land in contest, and the deed from Benjamin Elliott, to the said James, together with all the endorsements upon, and authentications annexed to* the-first mentioned .déed; which endorsements and authentications are-in the following words and figures, to wit: — “Acknowledged by James Elliott & Sarah G. Elliott. .September 11th, 1813.
 

 Attest — J. M’Kinney, Jr. Clerk.”
 

 “
 
 Woodford
 
 County,
 
 set. September 11th,
 
 1813.'
 

 This deed, from James Elliott, and Sarah G. Elliott his wife, to Benjamin Elliott, was this day produced before me, and acknowledged by said James and Sarah to be their act and deed; and the same is duly recorded.
 

 John M’Kinney, Jr. C. W. C. C. ’
 

 “
 
 Woodford
 
 County,
 
 set. November County Court,
 
 1823.
 

 “ On motion of Benjamin Elliott, by-his attorney, and it appearing to the satisfaction of the Court, by the endorsement on the deed from James. Elliott and wife, to him, under date of 12th June 1813, and by parol proof, that said deed was acknow
 
 *335
 
 ledged in due torm of law by Sarah G. Elliott, before the clerk of this Court, on the 11th of September 1813 ; but that the certificate thereof was defectively made out : It' is ordered, that the said certificate be amended to conform to the provisions of the law in such cases, and that said deed and-certificate, as amended, be again recorded. Whereupon said certificate was directed to be amended, so as to read as follows, to wit: — -
 

 “Woodford
 
 County,
 
 set. September
 
 11
 
 th,
 
 Í813.
 

 This day, the within named James Elliott, -and Sarah G. Elliott his wife, appeared before me, the clerk of the Court of rh’e county aforesaid, and acknowledged the within indenture, to be their act and deed: and tlie said Sarah being first examined,. privily and apart from her husband, did declare, that she freely and willingly sealed the said writing, which was then shown and explained to her by me, and wished not to retract it, but consented that it should be recorded. The said deed, order of Court, and certificate, as directed to be amended, are all duly recorded in my office.
 

 Attest — John M’Kinney, Jr. C. W. C. C.”
 

 It was proved by John M’Kinney, a witness examined on the part of the defendants, that the endorsement made on' the back of the deed,' from Elliott and wife, to Benjamin Elliott, in these words, to wit: — “Acknowledged by James Elliott and Sarah G. Elliott September 11th,' 1813.
 

 Attest — J. M’Kinney, Clerk;”
 

 Was'in the hand writing of the said clerk of the Woodford County Court, and was the minute made by him, at the time said deed was acknowledged; and it was also proved, that the certificate of. the acknowledgment and recording of the said ■deed, endorsed on said deed, was, at some subsequent time, written and drawn out by a deputy of said clerk, from the said minute. And the clerk deposed, that although he had not a-particular recollection of all the facts, that he remembered the circumstance of James Elliott and his wife coming to his office to acknowledge said deed:, that he knew what his duty required in such cases, and that the acknowledgment and privy examination, and an explanation of the instrument to her, was requisite, in order to its being recorded as to her. ' And that he did not doubt he had done his duty in this instance, and that said deed had been acknowledged by Mrs. Elliott, in all respects. Other parol evidence was given, conducing to prove, that, in point of fact, the said deed from Elliott and his wife, was regularly acknowledged by the wife before the clerk, upon his privy examination of her.
 

 The said M’Kinney, upon cross-examination, further proved, that after the said deed and certificate of the acknowledgment
 
 *336
 
 thereof, had been recorded, and in the lifetime of Mrs. Elliott j he had, at the instance of her counsel, made out a true copy of the record of said deed, and certificate of the acknowledgment thereof, by Elliott and wife, as they were then upon the record; which copy, the plaintiff gave hr evidence: that after the death of Mrs. Elliott, application was made to him, by the counsel of the defendants, to. alter the certificate of the acknowledgment of the deed from Elliott and wife, to Benjamin Elliott, so as to state her privy examination; but which he declined. It was also proved, that the deed had remained in the possession of the clerk, from the time of its first acknowledgment, till after the certificate ordered by the County Court, was made upon it.
 

 After the defendants had closed the evidence on their side, which was as above stated; the Court, upon the motion of the plaintiffs’ counsel, instructed the jury, that the parol evidence which had been given on the part of the defendants, conducing to show a privy examination of Mrs. Elliott, was incompetent for that purpose: that a privy examination and,acknowledgment of a
 
 feme covert,
 
 so- as to pass- Or convey her estate,' could not, legally, be proved by parol testimony, but by record; and' that although they might believe, from the parol evidence, that-said deed had been acknowledged by Mrs.' Elliott, in all due form of law, upon her privy examination, and .all proper explanations given to her; yet, it constituted no defence to the action, unless such privy examination had been duly certified and recorded.-
 

 The Court further instructed the jury, that the certificate Of the. acknowledgment of said deed, by Elliott and wife; and the after certificate, by order of the County Court, of her privy examination; were not sufficient, in law, to pass her estate; because, the first shows no privy examination, and the County Court had no jurisdiction to order the second to be made. To all which opinions, and decision of- the Court, the defendants except, &c.
 

 It is argued, by the learned counsel in this Court, that the motion of the- defendants to exclude the evidence adduced on the.part of thé plaintiffs, or to instruct the jury that it was insufficient to prove title in the lessors of the plaintiff, ought to have been granted. The argument in this Court has not put the question on the ground, that taking the whole of the plaintiff’s evidence together, touching the derivation of the title of the lessors of the plaintiff, it is insufficient to ^deduce the title to them down from the patentee, though Sárah S.Elliott, who was seised thereof in severalty.
 

 We have however reviewed the evidence, with a view to that question, and are satisfied it is sufficient for that purpose.
 

 The ground of argument relied on here, is, that a part of the
 
 *337
 
 evidence was incompetent and inadmissible. It is said,' that so' much of the depositions as detail Mrs. Elliott’s conversations, concerning the 'manner of her acknowledgment of the deed, and so much of Mrs. Braugh's deposition,- as speaks of the letter of her deceased husband, and the letter itself, made part of her deposition were incompetent, and ought to have been rejected ; and that the reservation of the right to move to reject the evidence, admitted in the bill of exceptions, shows that the defendants’ counsel, had the right to insist upon the rejection of any part of the evidence, as incompetent. The argument admits of several answers'deemed satisfactory. Mrs. Elliott’s conversation, detailed in some of the depositions, in relation tp the defendant’s deed, can by no fair construction be brought within the motion. It related not to the title of the lessors of the plaintiff, but to supposed defects in the title of the defendants: and to use the language' of the bill of exceptions,, it was. the plaintiff’s evidence ‘‘touching the derivation of the title of the lessors of the plaintiff,” which the defendants moved to exclude. Besides, at that stage of the case, the defendants- had not introduced the'deed; and when we come to consider' the defendants’ title, after the deed wits introduced, it will appear, that Mrs. Elliott’s declarations could in no manner have influenced the verdict, and were therefore harmless. We are not prepared to admit, that Mrs. Braugh’s letter, on the subject of the family pedigree, proved by her evidence, and made part of her deposition, was not competent evidence to be left to the jury upon a question of pedigree or heirship. She was an aged member of the family, and'traces back the pedigree, and several branches of the family, for about seventy years.
 

 The rule, of evidence, that in questions of pedigree the declarations of aged and deceased members of the family maybe proved, and given in evidence, has not been controverted. But it is argued, that this rulé is qualified by this exception — . that declarations, made
 
 post litem
 
 motam, cannot be given in evidence; and it is insisted this case comes within the exception ; for although no suit had bepn commenced, yet a controversy had arisen, or was expected to arise.
 

 We doubt the application of the exception to this case. A controversy had arisen, or.was expected to arise,, between the heirs of Mrs. Elliott, and the defendants, concerning the validity of the deed of Mrs. Elliott, made while shp was a
 
 feme covert.
 
 But it does not appear, that any .controversy had aris: en, or was expected to arise, about who were her heirs. The
 
 lis mota,
 
 if it existed, was'not, who were heirs, but, whether Mrs: Elliott’s deed made a good title against the heirs, whoever they might be. It is not necessary, however, to- give anv
 
 *338
 
 positive opinion on this point, as other grounds exist upon which thc-motion was rightfully overruled. ■)
 

 It is conceded that the defendants’ counsel had a' right to move the Court below to exclude any part of the plaintiff’s evidence, which he might choose to designate as incompetent; but it is not admitted that he exercised that right. It does not appear, from the bill of exceptions, that he designated any particular piece or part of the evidence, ,as objectionable, and moved the Court to exclude it. But on the contrary, resting his case upon the assumption, that the whole evidence of the plaintiffs, taken togéther,. was. either incompetent, or insufficient, he moved the Court either to exclude, the whole, or to instruct the jury that the whole was insufficient to prove title in the lessors of the plaintiff. This could not be done, on the ground of incompetency, unless the whole was incompetent, which is not pretended; the Court was not bound to do more, than re-, spond to the motion, in the terms in which it was made. Courts of justice are not obliged to modify the propositions submitted by counsel, so, as to make them fit the case. . If they do not fit, that is enough to authorize their rejection. We have already said, the eyidence, taken all together, was sufficient
 
 t<\
 
 prove title in the lessors of the plaintiff. If any part of it was incomplete, the Court might, on a general motion to exclude the whole, have excluded such-parts; but the Court was not obliged to do so. ' There is therefore no error in the decision of the Circuit Court, overruling the motion of the defendants'; nor in the instructions given to the jury, upon that motion.
 

 We now proceed to an examination of the questions arising out of the instructions given to the jury, on the motion of the plaintiffs, in relation to the deed of James Elliott and Sarah G. Elliott his wife, to Benjamin Elliott; set up by the defendants in their defence.
 

 The general question involved in the first instruction, is, can the privy examination, and acknowledgment of a deed, by a
 
 feme covert
 
 so as to pass or convey her estate, be legally -proved by parol testimony ? We hold that they cannot.
 

 By the principles of the common law, a,married woman can. in general, do no act to bind her; she is said to be
 
 sub potestate viri,
 
 and subject to his will and control. Her acts are not like those of infants, and some other disabled persons, voidable only; but are, in general, absolutely.toid
 
 ah initio.
 

 In Virginia and Kentucky, the solemn modes of conveyance by fine and common recovery, have never been in common use; and in those states, the, capacity .of a
 
 feme covert
 
 to convey her estate by deed, is the creature of statute law; and to make her deed effectual, the forms and solemnities, prescribed by the statutes, must be pursued.
 

 
 *339
 
 . Thé Virginia statute of 1748, ch. 1st, after making provisions to enable/mes
 
 coverts to
 
 convey their estates by deed, upon Acknowledgment and privy examination, according'to prescribed forms; in the 7th section, has these words* — 44 Whereas, it has always been adjudged, that-where any deed has been'acknowledged by a
 
 feme
 
 covert,' and no. record made.of her privy examination, such deed is not binding upon th
 
 of eme
 
 and her. heirs. ” The 8th section enacts and declares, 44 That the law herein, shall always be held according to the said judgments,-arid shall never hereafter be questioned, &:c.”
 

 This law was adopted by’ Kentucky at her separation froiri Virginia, and is understood never to have been repealed.
 

 The 4th section of the Kentucky statute of 1796, (see 1
 
 Litt. Laws, p.
 
 569,) provides for the privy examination and acknowledgment'
 
 oí jemes covert-in
 
 open Court, and where they cannot conveniently attend; authorizes á commission to issue to'two justices to take and certify the acknowledgment, and privy examination; and declares, that 44 In either case, the said writing acknowledged by the husband,, and proved by. witnesses to be his act, and recorded,
 
 together
 
 with such privy examination and acknowledgment, &c., shall not .only be sufficient to convey or release any right of dower, &c., but be as effectual for evely other purpose, as if she were an unmarried woman.”'
 

 The 1st section of this Act, authorizes clerks of the County Courts, General Court, and Court of Appeals, to take, in their offices, the acknowledgirient or proof of the execution of deeds, and to record thein, upon acknowledgments or proofs, so taken by themselves; but did not authorize them to take the acknowledgment and privy examination
 
 offemes coverts.
 

 But, by a subsequent statute, clerks are authorized to take, in their offices, the 4 4 acknowledgment of all deeds, according to law.” And the Act. of 1810, (4
 
 Litt. Ky. Laws,
 
 165,) which authorizes the clerk of one county to take and certify the acknowledgment of a deéd to be recorded by the clerk of another county where the land lies, &c., declares, that44 if the due.acknowledgment, or privy examination of the wife, &c., shall have been taken, &c. by the clerk receiving the acknowledgment of the deed, &c., and that being duly certified with the (feed, and
 
 recorded,
 
 shall transfer such wife’s estafe, &c.” as fully, as if the examination had been made-by the Court, or the.clérk in whose office the deed shall be recorded.
 

 It is by construction of these fast recited laws, that the’clerks are held, in Kentucky, to be authorized to take the acknowledgments and privy examinations
 
 offemes coverts,
 
 iri aliñases of deeds made by them and their husbands.
 

 The Kentucky statutes, above recited, show clearly, that the ' legislature of that state has never lost sight of the principle de-
 
 *340
 
 dared by the' Virginia statute of 1748: “That when any deed has been acknowledged, by a
 
 feme covert,
 
 and no record made of her privy examination, such deed is riot binding upon the
 
 feme
 
 and her heirs. ”
 

 What the law .requires to be done, and appear of record, can only be done’ and made to appear by the record itself, or an exemplification of the record. It is perfectly immaterial whether there be an acknowledgment, or privy examination in fact or not,' if there be no, record made of the privy examination; for, by the express provisions of the law, it is not the fact of privy examination merely, but the recording of the faCt, which makes the- deed effectual to pass the estate of a
 
 feme covert.
 
 ■ ■
 

 - It.is now oniy necessary to state the second instruction given to the jury on' the plaintiffs’ motion,' to manifest its entire correctness. It was, “that the first certificate of the acknowledgment and recording of the deed of Elliott and wife, was not sufficient' in law to pass her estate; because, it showed no privy examination of the/eme.”
 

 The last instruction given by the Court to the jury presents a question of more, difficulty. It is, “that the after certificate, made by order of the County Coui't, of her privy examination, is insufficient, in law, to pass her estate; because the
 
 County
 
 Court hadjio jurisdiction or authority to order the said second certificate to be made.”
 

 It is argued, that the Circuit Court of the United States had no authority to question the jurisdiction of the County Court of Woodford county; and that its procedings were conclusive upon the matter, whether erroneous or not.
 

 We agree, that if the County Court had jurisdiction, its decision would be conclusive. But we cannot yield an assent to the proposition, that the jurisdiction of the County Court could not be questioned, when its proceedings were brought, collaterally, before the Circuit Court. We know nothing in the organization of the- Circuit Courts of the Union, which- can con-tradistinguish them from other Courts, in this respect.
 

 Where a Court has jurisdiction, it has a right to decide every question which occurs in the cause;- and whether its decision be correct or otherwise, its jr' gment, until, reversed,. is regarded as binding in every other Court. But, if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void; and form no bar to a recovery sought, even prior to a reversal, in opposition to them. They constitute no justification; and all persons concerned in executing-such judgments or sentences, are considered, in law, as' trespassers.
 

 This distinction runs through all the cases on the subject; and it proves, that the jurisdiction of any Court exercising au
 
 *341
 
 thority over a subject, may be inquired into in every Court, when the proceedings of the former are .relied on and brought before the latter by the party claiming the benefit of such proceedings.
 

 It is well known that the jurisdiction and authority of the . County Courts-of Kentucky are derived wholly, from the statute law of the state. In argument, we were referred tomo statute which was supposed, either in terms, or by fair construction, to confer upon the County Court any supervising .or controlling power over the acts of the clerk, in taking, in his office,the acknowledgment of a deed,, or in recording it, upon an acknowledgment there taken by him. . We have sought in vain for such a provision, and it is'believed none such exists. No' such supervising and controlling power can result to the Court, from the general relations.which.-exist between a Court and its clerk; for in this casé, the statutes confer upon the clerk, in his office, a distinct, independent, personal authority, to be exercised by him -upon his own judgment and responsibility.. We think, therefore, with the Circuit Court that the County Court had no jurisdiction or authority to order the after certificate of Mrs. Elliott’s privy ;examination to be made and recorded.
 

 But the argument, which seemed to be relied on most confidently .by the learned counsel, is, that the order of -the County Court may be disregarded; and the amendment considered as an amendment made by the clerk, of his own authority, and that the clerk was authorized to amend his own certificate, and record, at any time.
 

 It would-be difficult to maintain that the second certificate, or amendment as it is called, could rightfully be regarded, as.the clerk’s own act, independent of the order of the County Court; it appearing that he refused to do the act until the order was-made.. But be-it so.
 

 Had the clerk authority to alter the record of his certificate of the acknowledgment of the.deed, at any time after the record' was made? We are of opinion he had not.
 

 We are of opinion he acted ministerially, and not judicially, in the matter. Until Iris certificate of the acknowledgment of Elliott and wife was recorded, it was, in its nature, but ah act
 
 in pais,
 
 and alterable at the pleasure of the officer. But the authority of the clerk to make and record a certificate of .the acknowledgment of the deed, was
 
 functus officio,
 
 as soon as the record was made. By the exertion of his authority, the authority itself became exhausted. The act had become matter of record, fixed, permanent, and unalterable; and the remaining powers and duty of the clerk were only to keep, and preserve the record safely.
 

 If a clerk may. after a deed, together with the acknowledg-
 
 *342
 
 menl or probate thereof have been committed to record, under colour of amendment, add any thing to the record of the acknowledgment, we can see no just reason why he may not also subtract from it.
 

 The doctrine that a clerk may, at any time, without limitation alter the record of the acknowledgment of a deed, made in his office, would be, in practice, of very dangerous consequence to the laud titles of- the county, and cannot receive the sanction of this Court.
 

 It is the opinion of this Court, that there is no error in the judgment and proceedings of the Circuit Court, and the same are affirmed, with costs.
 

 Three witnesses — by a previous section of the law.